UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARISOL SEDA LOURIDO,                                    Docket No.:

                             *Plaintiff,*

                                                     **COMPLAINT**

   -against-

                                                     **PLAINTIFF HEREBY**
CHARTER COMMUNICATIONS, LLC,                       **DEMANDS A JURY TRIAL**

                             *Defendant.*
------------------------------------------------------------------X

      Plaintiff Marisol Seda Lourido ("Seda"), as and for her Complaint, respectfully alleges, all upon information and belief, as follows:

## JURISDICTION AND VENUE

      1.     This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1331, in that certain of the Plaintiff's claims arise under the laws of the United States, namely 29 U.S.C. §§ 201 and 207, the federal Fair Labor Standards Act ("FLSA"), and supplemental jurisdiction over the remainder of Plaintiff's claims under New York State Labor Law, §§1 *et seq.*, and the Administrative Code of the City of New York, §8-107 *et seq.* (referred to herein as "The New York City Human Rights Law"), pursuant to 28 U.S.C. §1367.

      2.     Venue is proper under 42 U.S.C §2000e-5(f)(3) and 28 U.S.C §1391(b) because some of the events or omissions giving rise to the claims herein occurred in the Southern District of New York and the Defendant does business in this District.



**IDENTITY OF PARTIES**

3. At all relevant times mentioned herein, Seda, who is a woman and is presently 51 years old, was employed by Defendant Charter Communications, Inc., until she was unlawfully forced out on May 30, 2018.

4. At all relevant times mentioned herein, Defendant Charter Communications, Inc. ("Charter") was and is a Connecticut corporation that conducts business in the County, City and State of New York.

5. Charter is a leading communications company that, among other business ventures, owns and operates a number of regional and national television networks and programs, including "NY1 Noticias," which is a New York based Spanish-language news network where Seda worked.

**BACKGROUND RELEVANT TO ALL CAUSES OF ACTION**

6. Seda commenced her employment with Charter in or around September 2016, as a part-time freelance Video Journalist.

7. As a Video Journalist, Seda was responsible for covering news that would run on NY1 Noticias and NY1 News by gathering relevant video and interviews in the field and reporting the story.

8. At all relevant times, Seda was responsible for covering news and breaking news that would take many hours to capture and report, sometimes requiring Seda to work as many as 10 to 12 hours in the field, and then produce the news story by selecting and preparing a video time line that would subsequently run on the air.

9. At all relevant times, Seda was fully qualified for her position, as confirmed by, among other things, the recognition she received from her peers by previously winning EMMY Awards from the National Academy of Television Arts and Sciences, as well as being invited to join the Board of Governors of the National Academy of Television Arts and Sciences, New York Chapter, and the positive feedback she received from Charter's management and her peers.

10. Despite the success of her work, the positive feedback and recognition that she received, and already working on some occasions more than forty (40) hours per week, Seda was employed by Charter as a part-time employee, paid by the hour, at a lower rate of pay and without benefits like health insurance, even though she desired to become a full-time employee, with benefits, increased salary, regular reporting schedule and a designated News Assistant.

11. At all relevant times, Seda directly reported to NY1 Noticias News Director Roberto Lacayo ("Lacayo"), who was approximately 45 years old.

12. Lacayo relied upon Seda's skills, experience and qualifications, as he regularly assigned her to cover the newsroom's most important breaking stories and on a number of occasions

Lacayo told Seda that he "need[ed]" her.

13. Lacayo's comments and actions revealed to Seda that, despite his positive statements towards her and her work in her current role, he held a discriminatory bias against Seda working in a full time Video Journalist role because she is an older women and that would prevent her from rising to a full time Reporter and, eventually, Anchor, at NY1 Noticias, as only by way of example, Lacayo had previously referred to another female journalist during an on-screen test, in Spanish, as "acabada," which translates roughly to "done" and "old bag," and Seda was told by another employee that Lacayo "wanted a young female with a mini-skirt" for a different studio role within the newsroom.

14. Nevertheless, in or around April 2017, Seda applied for a full-time Video Journalist with NY1 Noticias.

15. While Seda had already demonstrated that she was capable of reporting the news, Lacayo did not interview Seda for that full-time position.

16. When Seda confronted Lacayo in person about her application in or around May 2017, he simply ignored her.

17. Instead, Lacayo split the position into two part-time roles, both of which went to men who were younger than Seda and who had less demonstrable experience at NY1 Noticias – one of

whom had no experience in video journalism in general.

18. In or around January 2018, Seda applied for a second full-time position Video Journalist/Reporter position that became available.

19. Again, Seda was not even interviewed for the position and it ultimately went to a man who was younger than Seda and with less relevant experience than Seda.

20. Seda endured the humiliation of her colleagues asking her why she still had not received a full-time position despite her efforts over more than one year, working many hours per day.

21. Adding further degradation to Seda's work experience, Lacayo often removed Seda from her regular assigned hours to help onboard the younger and less experienced male hires to the roles she was not given.

22. When Seda made subsequent complaints to Lacayo about ignoring her applications, he would punish her by unilaterally changing and manipulating her schedule and giving her less desirable assignments and hours.

23. On or about March 13, 2018, Seda complained to Charter by email to John McNalley ("McNalley"), Director of Human Resources, stating that "the two individuals who were selected

for the roles were young men with far less knowledge and experience" and that she believed that Lacayo's failure to be even interviewed for these positions "constituted discrimination."

24. On or about March 15, 2018, Seda met with McNalley in person to discuss her complaint, at which time Seda reaffirmed her complaint of discrimination.

25. Seda complained to McNalley that she had endured this humiliating discrimination despite sometimes working as many as 10-12 hours per day, to which McNalley replied "Well, we do pay you overtime for those hours," to which Seda further complained, "No, you do not."

26. McNalley responded to these and other complaints Seda made during the meeting by saying that he would "look into things."

27. In addition, Seda retained legal counsel to address her complaints of discrimination, who sent multiple letters to Charter to address her complaints, and Seda subsequently advised Charter that she had an attorney, but Charter did not respond to her attorney.

28. On or about March 23, 2018, Tasha Jones ("Jones"), a member of the Corporate Human Resources team at NY1, emailed Seda to arrange a phone call to discuss Seda's complaints.

29. On or about March 27, 2018, when Seda and Jones spoke by phone, Seda again complained about the discrimination she was forced to endure.

29. On May 10, 2018, Jones advised Seda that she had completed her investigation and that Charter closed her complaint, saying "The Charter Communications Employee Relations Department found no evidence that any employment decisions violated Company policy or the law," though Seda believed that Jones had conducted a pre-determined investigation that did not genuinely look at Seda's complaints, but was instead designed to protect Charter.

30. Shortly thereafter, by emails dated May 11 and May 18, 2018, Seda again complained to Jones, stating that her investigation did not include many extremely pertinent aspects of her complaint, including her complaints to McNalley, the easily verifiable fact that each time Seda complained to Charter, Lacayo unilaterally changed her schedule in disruptive ways and that she was clearly ignored for two open positions in favor of less experienced, younger males.

31. In response, by email dated May 11, 2018, Jones appallingly refuted Seda's additional complaint by falsely stating that the candidates chosen by Lacayo "had more experience than [Seda]," which is simply not true.

32. Seda was deeply discouraged and disappointed, as Charter's conclusion to her complaints meant that Seda could expect to continue to toil in a part-time role, field humiliating questions about why she could not land a full-time role that she was clearly qualified to obtain and report to Lacayo with his discriminatory bias unchecked.

33. There was nowhere left for her to turn within the company, and no possibility for future advancement within the company, as Charter would not address Lacayo's discriminatory bias against older women working in roles that were predominantly in front of the camera.

34. Seda was forced out of her workplace and communicated this to McNalley by email dated May 25, 2018, which McNalley and Lacayo ignored, simply removing her from the schedule without further communication to her directly.

35. At all relevant times, Charter paid Seda on an hourly basis for her work and she was in a role that is not exempt from the requirement to pay overtime.

36. At all relevant times, despite sometimes working over 40 hours per week, Seda was only paid for up to the first 40 hours that she worked and not for any additional hours that she was required and expected to work.

37. As a result of Charter's discriminatory conduct, Seda has suffered the adverse effects of discrimination, the quality of her life has been irreparably damaged and her self esteem, self respect and well-being has been irreversibly harmed because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Seda into the future, so that the quality of Seda's life has been significantly damaged as a result of the discrimination to which she was subjected to by Charter.

38. Here, Charter's conduct towards Seda shows that it acted with wilful or wanton negligence, or recklessness, or a conscious disregard of Seda's rights under the New York City Human Rights Law, or that its unlawful actions against Seda were so reckless as to amount to a disregard of Seda's rights, so that in addition to all the damages inflicted upon Seda and in addition to all the measure of relief to which Seda may properly be entitled herein, Charter should also be required to pay punitive damages as punishment for its discriminatory conduct in order to deter it and others similarly situated from engaging in such conduct in the future.

### AS FOR A FIRST CAUSE OF ACTION ON BEHALF OF SEDA AND AGAINST CHARTER FOR VIOLATION OF FLSA OVERTIME LAW, 29 U.S.C. §201, *et seq.*

39. Seda repeats, re-alleges and incorporates in full paragraphs 1 through 38 of this Complaint as though fully set forth at length herein.

40. Throughout her employment, Charter knowingly failed to pay Seda for work performed above forty (40) hours per workweek in violation of the federal overtime provisions of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207.

41. Seda is not an exempt employee under the relevant provisions of the FLSA.

42. Seda is entitled to recover compensatory damages for the unpaid overtime hours that she worked, liquidated damages as provided by the FLSA, attorney's fees and costs, along with such other and further relief as this Court deems just and proper.

**AS FOR A SECOND CAUSE OF ACTION ON
BEHALF OF SEDA AND AGAINST CHARTER FOR
VIOLATION OF NYLL OVERTIME LAW, NYLL § 650, *et seq.***

43.     Seda repeats, re-alleges and incorporates in full paragraphs 1 through 38 of this Complaint as though fully set forth at length herein.

44.     Throughout her employment, Charter failed to pay Seda for work performed above forty (40) hours per workweek in violation of the overtime provisions of the New York State Labor Law ("NYLL"), Article 6 §198.

45.     Seda is not an exempt employee under the relevant provisions of the NYLL.

46.     Seda is entitled to recover compensatory damages for the unpaid overtime hours that she worked, liquidated damages as provided by NYLL Article 6 §198, attorney's fees and costs, pre- and post-judgment interest, along with such other and further relief as this Court deems just and proper.

**AS FOR A THIRD CAUSE OF ACTION ON BEHALF OF
SEDA AGAINST CHARTER FOR AGE DISCRIMINATION
IN VIOLATION OF CHAPTER 1, TITLE 8, §8-107(1)(a) OF
THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK**

47.     Seda repeats, re-alleges and incorporates in full paragraphs 1 through 38 of this Complaint as though fully set forth at length herein.

48. At the time Seda was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her age.

49. Throughout the time of her employment with Charter, Seda was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

50. Charter treated Seda less well because of her age and took adverse employment action against her by denying her employment opportunities and ultimately forcing her out of her workplace, all of which was permitted and condoned by Charter.

51. The circumstances surrounding Charter's conduct towards Seda, including completely ignoring her internal applications for full-time positions in favor of less experienced, younger men, and completely disregarding her complaints regarding same, gives rise to a very real inference that the actual basis for Charter's actions towards Seda was gender discrimination.

52. The aforementioned acts of Charter constitute unlawful discrimination against Seda in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (referred to herein as "The New York City Human Rights Law"), which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . .[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . age . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

53.     As a result of Charter's violations of the New York City Human Rights Law §8-107(1)(a), Charter is therefore liable to Seda pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

54.     Seda has been caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Charter's outrageous conduct in violation of Seda's human rights, all of which has impacted her well-being and the quality of her life.

55.     As a direct and proximate result of Charter's discriminatory conduct complained of herein, Seda has suffered damages, injuries and losses, both actual and prospective, which include damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Seda alleges to be in the amount of Two Million Dollars ($2,000,000).

56.     Here, Charter's conduct towards Seda shows that it acted with wilful or wanton negligence, or recklessness, or a conscious disregard of Seda's rights under the New York City Human Rights Law, or that its unlawful actions against Seda were so reckless as to amount to a disregard of Seda's rights that, in addition to the damages inflicted upon Seda and in addition to the measures of relief to which Seda may properly be entitled herein, Charter should also be required to pay punitive damages as punishment for its reprehensible conduct in the further amount of Three

Million Dollars ($3,000,000) in order to deter Charter and others similarly situated from such conduct in the future.

### AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF SEDA AGAINST CHARTER FOR GENDER DISCRIMINATION IN VIOLATION OF CHAPTER I, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

57. Seda repeats, re-alleges and incorporates in full paragraphs 1 through 38 of this Complaint as though fully set forth at length herein.

58. At the time Seda was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her gender.

59. Throughout the time of her employment with Charter, Seda was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

60. Charter treated Seda less well because of her gender and took adverse employment action against her by denying her employment opportunities and ultimately forcing her out of her workplace, all of which was permitted and condoned by Charter.

61. The circumstances surrounding Charter's conduct towards Seda, including completely ignoring her internal applications for full-time positions in favor of less experienced, younger men,

and completely disregarding her complaints regarding same, gives rise to a very real inference that the actual basis for Charter's actions towards Seda was gender discrimination.

62.  The aforementioned acts of Charter constitute unlawful discrimination against Seda in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (referred to herein as "The New York City Human Rights Law"), which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . .[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

63.  As a result of Charter's violations of the New York City Human Rights Law §8-107(1)(a), Charter is therefore liable to Seda pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

64.  Seda has been caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Charter's outrageous conduct in violation of Seda's human rights, all of which has impacted her well-being and the quality of her life.

65.  As a direct and proximate result of Charter's discriminatory conduct complained of herein, Seda has suffered damages, injuries and losses, both actual and prospective, which include

damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Seda alleges to be in the amount of Two Million Dollars ($2,000,000).

66.     Here, Charter's conduct towards Seda shows that it acted with wilful or wanton negligence, or recklessness, or a conscious disregard of Seda's rights under the New York City Human Rights Law, or that its unlawful actions against Seda were so reckless as to amount to a disregard of Seda's rights that, in addition to the damages inflicted upon Seda and in addition to the measures of relief to which Seda may properly be entitled herein, Charter should also be required to pay punitive damages as punishment for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Charter and others similarly situated from such conduct in the future.

67.     Seda, therefore, seeks judgment against Charter on this cause of action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this cause of action, making a total claim of Five Million Dollars ($5,000,000).

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff Marisol Seda Lourido demands judgment against Defendant Charter Communications, Inc., on the First Cause of Action, an award of compensatory damages equal to all unpaid overtime wages pursuant to the FLSA; plus liquidated damages or punitive damages and attorney's fees and costs pursuant to FLSA, 29 U.S.C. §216; and on the Second Cause of Action, an award of liquidated damages or punitive damages pursuant to the NYLL, including but not limited to NYLL §663(1) for willful violations of NYLL, and NYLL §§198 and 663(4); and on the Third Cause of Action, an award in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages for a total of Five Million Dollars ($5,000,000); and on the Fourth Cause of Action, an award in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages for a total of Five Million Dollars ($5,000,000); plus pre-judgment interest on the awards herein, the costs of this action and reasonable attorney's fees; and for such relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By: _____
BRIAN HELLER
DANIEL H. KOVEL
3 Park Avenue, 27th Floor
New York, New York 10016
(212) 889-6565